## John Torrent v. The Muskegon Booming Company.

*Bill to quiet title.* A bill to remove a cloud upon the complainant's title will not be sustained, when, by the case made by the bill, the alleged cloud appears to be supported by an equitable right in the defendant.

*Heard October 20. Decided October 25.*

Appeal in Chancery from Muskegon Circuit.

The bill in this case was filed by John Torrent in the Circuit Court for the County of Muskegon in Chancery, against The Muskegon Booming Company, to remove a cloud upon the title to premises which the complainant alleged to be in his possession, but to which the defendant, as the bill stated, claims a right under a lease executed by a party whose rights had passed to the complainant. The defendant demurred, and on the hearing in the court below, the demurrer was sustained and the bill dismissed. The complainant appeals to this Court.

*E. S. Smith* and *E. Potter*, for complainant.

*D. D. Hughes*, for defendant.

CAMPBELL, CH. J.

This bill purports to be a bill to remove and quiet certain claims set up against complainant's title. The bill avers a clear and complete record title in complainant, and nothing whatever to interfere with or throw doubt upon it, whatever it may be, except the claims of defendants under a lease which is set forth, and which was of an equitable and not a legal title.

It appears that one Newell, who owned the premises in 1865 and 1866, gave to one George Arms contracts of sale covering the lands in question with others, and in the usual

form of executory contracts, for a consideration to bo performed and paid. In August, 1867, Arms assigned these contracts by way of security for $3,000 to Ryerson, Hills & Co. (retaining possession of the originals). In November, 1867, he assigned them as security for $3,500 to the defendants. In March, 1868, he assigned them, subject to the two other claims, to secure another debt of $1,300 to Ryerson, Hills & Co.

At some time, which the bill states was claimed by defendants to have been in April, 1866, but averred by complainant to have been after the first mortgage to Ryerson, Hills & Co., Arms leased the property in dispute, which is a part of the property claimed by complainant, to defendants for five years from April, 1866, with a right of renewal not to exceed twenty years, for an annual rent of $2,000, with the right in defendants to pay any contract installments in default, and apply them as rent.

In April, 1869, complainant bought up the Ryerson claims. In May, 1869, by the mutual consent of Arms, Newell and complainant, Arms surrendered his contracts, complainant claiming that as he had retained the originals and assigned only copies, he had a right to do so; that Newell agreed with Arms to pay his debt to the defendants, and so informed them, and they accepted Newell as their debtor, and agreed to the arrangement so made as to the cancelation of the contracts and the payment of the debt.

Complainant then purchased the lands of Newell, and avers Newell gave him possession of the "lands, riparian rights, water rights, since which time your orator has had possession of said lands and water rights, and has used the same with slight exceptions."

Taking the whole bill together, if the question of possession should become material, we should regard the allegations as evasive and insufficient. But the case is so

lacking in more substantial equities that we shall not discuss this question.

There is no question but that defendants hold a lease made before the last Ryerson mortgage, made by the equitable owner and never agreed to be given up by them. They hold a debt secured by an equitable mortgage, also prior to that last mortgage, which was made subject to it. When complainant bought the Ryerson mortgages he took them subject to the lease if it was prior to both; and if not, he took them with only the amount of the first Ryerson mortgage preferred to the lease and second mortgage. The idea that under these circumstances the fact that Arms retained the original papers would cut off the securities, is simply ridiculous. He was equitable owner of the land, and all these transactions bound the equitable title. When Newell accepted the surrender he took the land subject to the liabilities. The lease bound him, and the mortgages bound him. The bill does not set up any agreement by the defendants to give up their security for the debt, although it seeks by inference to lead to that idea. It is entirely consistent with the shifting of the security from the equitable to the legal title. It does not set up any agreement whatever to surrender the lease, but insists the description therein is vague and bad.

We do not quite comprehend under what head of equitable jurisdiction this bill is supposed to lie. If the lease is void for uncertainty it cannot very well cloud the title; and it could not under any circumstances affect it unless really valid, as Arms had no legal title. In either case, if complainant is in possession, it cannot disturb him, and if out of possession, he must go to law to establish his title, and not resort to this Court.

But, inasmuch as by his own showing, the defendants have superior equities, and he is seeking the aid of equity

to enforce 'a legal claim without equity against them, it is very clear that no court of equity can entertain his complaint.

. The bill was properly dismissed, and the decree must be affirmed with costs.

COOLEY and GRAVES, JJ. concurred.

CHRISTIANCY, J. did not sit in this case.