MAAS BROTHERS, INC., *v.* WEITZMAN.

1. LANDLORD AND TENANT—RENEWAL OF LEASE—OPTIONS.

In an option for renewal of a lease, unless otherwise specified, the conditions of the new term are the same as in the original lease, except the privilege of renewal.

2. SAME—RENEWAL OPTION—NATURE OF CONTRACT.

The option for an additional term, contained in a lease, is an executory unilateral contract which becomes binding upon both parties when the lessee exercises its privilege and gives notice within the time provided and the provision is not void for lack of mutuality.

3. ARBITRATION AND AWARD—REFUSAL TO NAME ARBITRATOR—COURTS.

Where the provision for an appraisal is incidental and subsidiary to the substantive part of the agreement, the party refusing to name an appraiser or arbitrator cannot be heard to complain where the court performs or provides for the performance of such service.

4. LANDLORD AND TENANT—ARBITRATION OF RENTAL VALUE—CONTRACTS.

Clause of lease providing for a board of arbitrators to fix the rental value of the premises does not render the contract void as being too indefinite to be enforceable.

5. ARBITRATION AND AWARD—SPECIFIC PERFORMANCE—EQUITY.

Although a court of equity will never, except under authority of statute, decree the specific performance of an agreement to arbitrate, it may in a proper case grant appropriate equitable relief to a party sustaining injury by its breach.

6. SAME—JUDICIAL DETERMINATION OF SUBSIDIARY FACTUAL QUESTIONS—SPECIFIC PERFORMANCE OF PRINCIPAL CONTRACT.

A court of equity will enforce an agreement to arbitrate if the agreement is to submit certain factual questions to selected persons for determination and is not of the essence of the prin-

cipal contract, but is merely subsidiary or auxiliary to its main purpose and scope, the court determining the subsidiary question of fact itself, or by appraisers or arbitrators of its own selection, and enforcing specific performance of the principal contract.

7. LANDLORD AND TENANT—JUDICIAL ARBITRATION OF RENTALS ON RENEWAL—ENFORCEMENT OF OPTION.

In a lease with option for renewal upon rental terms to be fixed by arbitrators, a court of equity on refusal of one of the parties to arbitrate may determine the question of a fair and reasonable rental and when such terms are so fixed by the court, such option is enforceable.

8. SAME—RENEWAL LEASES—ARBITRATION—COURTS—SPECIFIC PERFORMANCE.

In renewal leases the tenant has *quasi* proprietorship lacking merely a valuation, and since gross inequity would result should he lose his rights through a failure upon the part of arbitrators provided by the contract to fix a valuation, a court of equity will determine terms of reasonable rental and thereafter enforce specific performance of the contract upon such terms.

9. SAME—REFUSAL TO ARBITRATE—COURTS—SPECIFIC PERFORMANCE.

On refusal of lessor under a five-year lease to arbitrate the amount of rentals to be paid by lessee in accordance with the provision in the contract of lease relative to renewals, the trial court had authority to ascertain the terms of reasonable rental for a renewed period and to decree specific performance of a lease of renewal on such terms.

10. SAME—SPECIFIC PERFORMANCE OF RENEWAL OPTION—RENTAL BASED ON PERCENTAGE OF LESSEE'S GROSS SALES AND GUARANTEED MINIMUM—ESTOPPEL.

In decree of specific performance of lessee's option to renew a five-year lease of a store, lessors *held*, not entitled to complain of provision fixing rental for renewal at a percentage of lessee's gross sales with a guaranteed minimum because no such provision was contemplated when original lease was executed where lessors, in refusing to renew lease, made no objection to rental tendered by lessee because it was on a percentage basis and did not object to such basis in their pleadings, their expert witnesses in real estate values each gave testimony based on percentage leases with guaranteed minimum rentals, negotiations between the parties prior to suit embodied numerous pro-

posed provisions of a like nature, lessors entered into tentative lease of the premises with another party on such a basis, and other leases by the lessors with other parties for space in the same building likewise provided for percentage rentals.

11. APPEAL AND ERROR—FINDINGS OF COURT AS TO RENEWAL RENTALS —EVIDENCE.

Findings of trial court in fixing terms of renewal lease upon a percentage of lessee's gross sales with a guaranteed minimum upon lessor's refusal to arbitrate such matter *held,* amply supported by testimony.

12. WITNESSES—EXPERTS—FEES—DISCRETION OF COURT AS TO AL-LOWANCE.

Allowance of expert witness fees by trial court in suit involving matter of fixing rentals under a renewal lease of a store building *held,* not an abuse of the discretion lodged in the court.

Appeal from Wayne; Taylor (Mark D.), J., presiding. Submitted April 11, 1939. (Docket No. 65, Calendar No. 40,454.) Decided June 5, 1939. Rehearing denied July 6, 1939.

Bill by Maas Brothers, Inc., a Michigan corporation, against Harry Weitzman, Lillian Weitzman, and Samuel B. Tilles to set aside an attempted forfeiture of an option, to enjoin the institution of summary proceeding, and for other relief. Decree for plaintiff. Defendants appeal. Affirmed.

*Benjamin D. Burdick (Sidney J. Karbel,* of counsel), for plaintiff.

*Louis Smilansky (William M. Donnelly,* of counsel), for defendants Weitzman.

*David Goldman (William M. Donnelly,* of counsel), for defendant Tilles.

MCALLISTER, J. On October 3, 1932, plaintiff leased certain premises for use as a store from defendants for a period of five years from November 1, 1932.

The contract of lease contained the following provision:

"If the lessee desires to renew the lease upon the premises herein described, the said lessee shall, on or before the 1st day of May, 1937, notify the lessor in writing, by registered mail, of his intent to request the renewal of a lease upon the premises described, and shall state the amount of rental the said lessee is desirous of paying for the premises described for an additional period of five years, and if the lessor is in accord with the proposal thus made, the proposal shall be accepted in writing by the lessor, and sent to the lessee by registered mail, within five days after receipt of the request for renewal. If the lessor refuses to accept the proposal made by the lessee, he shall so notify the lessee and if the lessor and lessee cannot agree upon the terms of an extension, then each of the parties hereto shall select an arbitrator to determine the amount of rental, and if the two arbitrators cannot agree, then the two arbitrators shall select a third arbitrator and the findings of two of the three arbitrators thus selected shall be final and binding upon both parties hereto. If the two arbitrators selected are unable to agree upon a third arbitrator, then a request shall be made of the presiding judge of the Wayne circuit court to select such third arbitrator."

Plaintiff occupied the premises under the terms of the lease and invested considerable sums of money in equipment, which it was provided by the lease should become the property of the lessor. In 1937, plaintiff desired to renew the lease, and after the parties had been unable to agree on the amount of rentals to be paid, plaintiff on April 21, 1937, sent defendant its written exercise of the option of renewal, with the offer to pay as rental 7 per cent. of its gross business and 6 per cent. of its subtenants' gross business, with a minimum guaranteed

rental of $16,500 a year, payable in monthly instalments. The previous rental had averaged $12,600 a year, commencing at $10,500 the first year and graduating to $15,000 during the last year.

When defendants were notified of plaintiff's exercise of its option of renewal, they objected that the offer of rental was too low, and that plaintiff was not entitled to renew the lease because it was in default in payments of rentals at that time in the amount of $9,187.50. There was negotiation between the parties but they were unable to agree on the rentals, and on June 5, 1937, plaintiff notified defendants of its appointment of an arbitrator, according to the terms of the lease. On June 14, 1937, defendants replied to plaintiff, refusing to arbitrate or negotiate further for the reasons contained in their letter of April 29, 1937, which stated that the offer of rental was too low to warrant consideration and that plaintiff was in arrears of rental in the amount above-mentioned. Thereafter, on July 13, 1937, plaintiff filed its bill of complaint, asking the court to set aside an attempted forfeiture of defendants, and restrain the institution of summary proceedings against plaintiff, as well as to ascertain and decree the rentals to be paid for a renewed period; and to decree renewal of the lease for a period of five years. Defendants filed answer insisting that plaintiff was in default for past rentals in the amount of $9,187.50, thereby forfeiting its right to a renewal; that the offer of rental was made in bad faith, and was so low that its only purpose was to force arbitration; and that therefore plaintiff by its inequitable conduct had precluded itself from resort to a court of equity.

In numerous petitions and amended answers of the defendants, their chief claim is that plaintiff forfeited its right to exercise the option because of

arrears in rentals, and in a later amended answer, it is also claimed that plaintiff is not entitled to specific performance of its right under the option, because of lack of mutuality in the enforcement of such a provision.

On the trial, defendants insisted upon the arrears, first claiming the original amount stated; and later a reduced sum; but such claim was finally abandoned; and it was conceded that plaintiff had paid the full amount required in the lease and was not in arrears. The trial court held that the option clause was enforceable; that plaintiff had taken the proper steps to enforce it; and from the testimony of expert witnesses in real estate values, and the evidence, found that a fair rental for the premises for a renewed five-year period was 7 per cent. of the amount of gross sales of plaintiff and of any and all of its subtenants, with a minimum guaranteed rental of $16,500 a year, payable in equal monthly instalments, and decreed specific performance thereof. Defendants appeal, claiming the option is unenforceable because of lack of mutuality and uncertainty of terms, and that plaintiff's offer did not comply with the terms of option provided in the lease. It is also contended that the court had no right under the option clause to decree a percentage rental with a guaranteed minimum payment.

In an option for renewal of a lease, unless otherwise specified, the conditions of the new term are the same as in the original lease, except the privilege of renewal. *Metzgar Register Co.* v. *Thomas Canning Co.*, 220 Mich. 435. It is presumed that a lease for a certain period with the privilege of renewal is to be continued on the same terms and with precisely the same rights and privileges to the tenant as during the previous period, unless some other intention is expressed. *Brown* v. *Parsons*, 22 Mich. 23.

In *Metzgar Register Co.* v. *Thomas Canning Co.,* *supra,* 440, it was said:

"The 'option for a second year' was an executory unilateral contract which became binding upon both parties when defendant exercised its privilege and gave notice within the provided time."

In *Michigan Trust Co.* v. *Herpolsheimer,* 256 Mich. 589, it was held that an option of renewal in a lease was a continuing offer on the part of lessor, and when accepted by the lessee, it became a binding contract of lease. Such an option of renewal is not void for lack of mutuality.

The terms of such renewal in the instant case are therefore deemed to be complete, unless the provision with reference to arbitration of rentals can be said to result in uncertainty.

In *Stern Co.* v. *Friedman,* 229 Mich. 623, defendant had leased certain premises to plaintiff with a right to renew upon a rental to be agreed upon or determined by arbitration. Defendant lost its underlying lease and being unable to renew the lease, plaintiff sued for damages. In holding that plaintiff was entitled to such damages as he could prove, because of inability of defendant to give a renewal of the lease, the court said:

"This presents the question of whether a contract in a lease for a renewal thereof at a rental to be agreed upon by the parties, or determined by arbitration, is sufficiently definite to be valid. Numerous cases are to be found sustaining contracts of like import, with the exception that parties thereto agreed to choose arbitrators. * * * Had defendant exercised his option for a renewal of his lease with the owner, then plaintiff under its notice of election to remain under right of renewal could have continued in possession, * * * and if defendant refused

to agree upon the rent or have the same determined in accordance with the agreement the court upon application of plaintiff would have fixed it.''

In its opinion in the above case, the court quoted with approval from *Nakdimen* v. *Atkinson Improvement Co.,* 149 Ark. 448 (233 S. W. 694), as follows:

''In the present case the essence of the contract was the renewal of the lease for another term of ten years, and the fixing of the rental for that period was merely ancillary to the main contract. Where the provision for an appraisal is incidental and subsidiary to the substantive part of the agreement, the party refusing to name an appraiser or arbitrator cannot be heard to complain where the court performs or provides for the performance of such service. The court in fixing the reasonable rental value treats the method as a matter of form rather than substance. So it may be said in the present case that the clause of the contract providing for a board of arbitrators to fix the rental value of the premises does not render the contract void as being too indefinite to be enforceable. *Mutual Life Ins. Co. of New York* v. *Stephens,* 214 N. Y. 488 (108 N. E. 856, L. R. A. 1917C, 809) ; *Grosvenor* v. *Flint,* 20 R. I. 21 (37 Atl. 304).''

In 3 Am. Jur. p. 908, the rule is stated as follows:

''Although a court of equity will never, except under authority of statute, decree the specific performance of an agreement to arbitrate, it may in a proper case grant appropriate equitable relief to a party sustaining injury by its breach. Such a case is presented where the agreement is incident to a principal contract already partly performed, the parties cannot be placed *in statu quo,* and gross injustice would result from a refusal of chancery to enforce the principal contract. Speaking generally, chancery will enforce such a contract if the agreement is to

submit certain factual questions, such as price, value, quantity, quality, et cetera, to selected persons for determination, and is not of the essence of the principal contract, but is merely subsidiary or auxiliary to its main purpose and scope. A court of equity may determine the subsidiary question of fact itself, or by its master in chancery or by appraisers or arbitrators of its own selection, and may enforce specific performance of the principal contract.''

In a lease with option for renewal upon rental terms to be fixed by arbitrators, a court of equity on refusal of one of the parties to arbitrate may determine the question of a fair and reasonable rental and when such terms are so fixed by the court, such option is enforceable. See *Bird* v. *Couchois,* 214 Mich. 607. In renewal leases, the tenant has a *quasi* proprietorship lacking merely a valuation, and gross inequity would result should he lose his rights through a failure upon the part of arbitrators provided by the contract to fix a valuation. In such a case, a court of equity will determine terms of reasonable rental and thereafter enforce specific performance of the contract upon such terms. *Kaufmann* v. *Liggett,* 209 Pa. 87 (58 Atl. 129, 67 L. R. A. 353, 103 Am. St. Rep. 988).

Cases principally relied upon by defendants are distinguishable, and are not in conflict with a determination that the option herein is valid and enforceable. In *Rust* v. *Conrad,* 47 Mich. 449 (41 Am. Rep. 720), specific performance of an option to lease was denied for lack of mutuality. But such holding was based upon lack of mutuality in the terms of the lease to be executed, where the lease provided for in the option gave the lessee the right of terminating it upon 30-days' notice. Relief was refused, not because such an option *per se* lacked mutuality, but because the lease provided therein would be, by its terms,

unenforceable. In *Matthews* v. *Plymouth Community Hotel Co.,* 265 Mich. 309, specific performance of an option to lease was refused. A restaurant proprietor had agreed to pay as rental a certain percentage of his gross receipts each month. When such lessee attempted to renew the lease, by option therein provided for, the lessor refused to renew for the reason that the dining room service of the restaurant had not been of the character contemplated by the lease. This court held that "specific performance * * * must always rest in the sound discretion of the court, to be decreed or not as shall seem just and equitable under the peculiar circumstances of each case," and that "under the terms of the * * * lease, had the plaintiff abandoned the premises, the defendant could not have enforced specific performance on his part." Such determination was based upon lack of mutuality. These authorities are not applicable to sustain defendants' claim herein.

On the refusal of defendants to arbitrate the amount of rentals to be paid by plaintiff in accordance with the provision in the contract of lease, the trial court had authority to ascertain the terms of reasonable rental for a renewed period and to decree specific performance of a lease of renewal on such terms.

It is contended by plaintiff that the court in its decree of specific performance of the option to lease had no right to impose, as terms of renewal, a minimum rental plus a percentage of the gross business of plaintiff and its subtenants, for the reason that a percentage lease of this nature was outside the contemplation of the parties at the time the lease providing for option was executed; and that the difficulties of enforcement of defendants' rights under a lease with such provisions of rental would work a hardship and would result in injustice. In consider-

ing such claim, it is pertinent to bear in mind defendants' own attitude, conduct, and understanding of the situation with regard to the opportune nature of percentage leases.  When plaintiff gave notice of exercise of its option under the lease, in accordance with the terms therewith, it submitted to defendants a proposal to pay a percentage of gross sales with a minimum guaranteed rental.  Defendants, while notifying plaintiff of their refusal to renew, gave as reasons for their action that the rentals proposed by plaintiff were too low; and that plaintiff had forfeited its rights to exercise the option by reason of its default in payment of rentals.  No complaint, however, was made to the proposed rental on the ground that it included a percentage of gross sales; nor did defendants at the time they filed their answers to plaintiff's bill of complaint voice any objection on the ground that plaintiff's proposal consisted of a percentage lease.

Furthermore, on the hearing of the case, defendants introduced evidence from several expert witnesses in real estate values on the question of a fair and reasonable rental.  All of such witnesses on the part of defendants testified as to their opinion of a fair and reasonable rental in a renewal lease; and all of such expert testimony was based upon percentage leases with guaranteed minimum rentals.  When the parties were carrying on negotiations prior to the filing of suit, their discussions embodied numerous proposed provisions for a percentage lease with a guarantee.  A further relevant consideration is that, pending the trial of this case, defendants, after refusing to renew with plaintiff, entered into an agreement of lease of the same premises here in controversy with Arnolds, Inc., a Michigan corporation, subject to condition that such lease would be void and of no effect if judgment were entered against defend-

ants in the instant case. This conditional Arnold lease also provided for percentage rentals, subject to a minimum guarantee. Other leases made by defendants with other parties, in the same building in which plaintiff's store is located, likewise provided for percentage rentals.

In view of the foregoing, it cannot be said that a percentage lease with guaranteed rentals as provided in the decree of the trial court is unconscionable or inequitable; except for the objections now made on appeal, such percentage leases would, at all times, appear to have been considered by defendants as especially acceptable and desirable; and defendants, under the facts in this case, are now barred from making complaint. The rental terms fixed by the court were based upon testimony of expert real estate witnesses. There was a considerable variance in such testimony; but on a review of the evidence we are constrained to hold that the findings of the court were amply supported. Complaint is made of the court's allowance of expert witness fees to plaintiff. Allowance thereof is within the discretion of the trial court, and we find no abuse of such discretion.

Decree affirmed, with costs to plaintiff.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.