**In re LHD REALTY CORPORATION, Debtor.**

**LHD REALTY CORPORATION, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Norma J. Childs, and William G. Brown, Trustee, Defendants.**

**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**LHD REALTY CORPORATION, Norma J. Childs, and William G. Brown, Trustee, Defendants.**

**Bankruptcy No. 80–2510RA.**
**Adv. No. 81–692.**

United States Bankruptcy Court, S. D. Indiana, Indianapolis Division.

April 1, 1982.

George T. Dodd, Fort Wayne, Ind., for Metropolitan Life Ins. Co.

Jack W. Lawson, Fort Wayne, Ind., for LHD Realty Corp.

Stephen R. Buschmann and John Carr, Jr., Indianapolis, Ind., for creditors' committee.

William G. Brown, Brazil, Ind., for Norma J. Childs and William G. Brown, trustee.

ENTRY ON COMPLAINT TO MODIFY OR SET ASIDE LEASE AND ON APPLICATION FOR LEAVE TO FORECLOSE MORTGAGE AND FOR ORDER SEQUESTERING RENTALS FOR USE AND BENEFIT OF REAL ESTATE AND IMPROVEMENTS

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the court upon the Application for Leave to Foreclose Mortgage and for Order Sequestering Rentals for Use and Benefit of Real Estate and Improvements (Application is treated as a complaint for relief from stay and will hereafter be referred to as such) filed by Metropolitan Life Insurance Company ("Metropolitan"), and upon the Complaint to Modify or Set Aside Lease filed by the debtor in possession, LHD Realty Corporation ("LHD") and by the Creditors' Committee.

The above parties stipulated to the entry of a Pre-trial Order in this cause and further stipulated that the court make its determination and enter any order based upon the Pre-trial Order. Metropolitan, LHD and the Creditors' Committee have filed briefs in support of their respective positions and have also filed reply briefs.

The Pre-trial Order discussed above contains *inter alia*, stipulated facts (section II) and stipulated exhibits (section V). The court hereby adopts said stipulations as the facts and evidence controlling this controversy.

### LHD's Complaint to Modify or Set Aside Lease

By its complaint LHD seeks to terminate or modify a lease in which LHD is the lessor and Metropolitan is the lessee. Said lease was in effect when LHD purchased the property in question in November, 1967. The lease is due to expire on August 31, 1982, but there is provision for five additional yearly renewals at the same rent at the option of the tenant (Metropolitan).

It is LHD's position that as an alternative to 11 U.S.C. § 365, the doctrine of commercial impracticability is available to it as a basis for relief and that the facts of the case demand either termination or modification.

Metropolitan opposes the use of the doctrine of commercial impracticability and maintains that LHD's only remedy is that outlined in § 365. That is to say, LHD may either only accept or reject the lease. Met-

ropolitan further maintains that given the existence of a remedy under § 365 the doctrine of commercial impracticability is unavailable to the debtor.

The treatment of an executory lease under the Bankruptcy Reform Act of 1978 ("Code") is governed by 11 U.S.C. § 365. In its Brief and Reply Brief LHD maintains that in the name of equity, and given the broad scope of jurisdiction and powers granted this court by Congress in 28 U.S.C. §§ 1471 and 1478, LHD may utilize the doctrine of commercial impracticability to seek equitable relief in this forum. This court does not agree. It is the court's view that Congress' intent in enacting that section was to make that section the exclusive remedy available to a debtor in an executory lease situation. In the name of equity the court cannot disregard the plain language of § 365 and the mandate of Congress embodied therein. The court finds, therefore, that the doctrine of commercial impracticability is not available to LHD as a means of terminating or modifying its lease with Metropolitan.

Section 365(a) allows the trustee, with court approval, to either accept or reject an executory contract or lease. In a situation like the instant one, in which the debtor is also the lessor, rejection does not allow the lessor to terminate the lease. Section 365(h) allows the lessee to either "treat the lease as terminated by such rejection, or ... remain in possession for the balance of the term of such lease and any renewal or extension of such term that is enforceable by such lessee under applicable nonbankruptcy law." It is clear that Congress' intent was to afford the debtor the benefit of rejecting an undesirable lease while at the same time protecting the property rights of the lessee. *See* H.R. No. 95–595, 95th Cong., 2d Sess. (1977) 349; S.R. No. 95–989, 95th Cong., 2d Sess. (1978) 60, U.S.Code Cong. & Admin.News 1978, pp. 5787. Thus, "rejection of the lease results merely in the cancellation of covenants requiring performance in the future [e.g. the providing of utilities, repair and maintenance, janitorial services, etc., which LHD

maintains are burdensome] by the debtor; rejection does not terminate the lease completely so as to divest the lessee of his estate in the property." 2 Collier on Bankruptcy, ¶ 365.09 at pg. 354–43 (15th ed. 1979). *See In the Matter of Penn Central Transportation Company,* 458 F.Supp. 1346 (E.D.Penn.1978); *In re 1438 Meridian Place, N.W. Inc.,* 11 B.R. 353, Bankr.L.Rep. ¶ 68,-042 (Bkrtcy.D.C.1981).

As an alternative to termination of the lease, LHD seeks to modify it. Section 365 does not provide for modification of a lease after acceptance. *See* 2 Collier on Bankruptcy, ¶ 365.09 at Pg. 365–43; *In re Pin Oaks Apartments,* 7 B.R. 364, 6 B.C.D. 1396, (Bkrtcy.S.D.Tex.1980). As stated in the Third Circuit in *In re Italian Cook Oil Corp.,* 190 F.2d 994, 997 (3rd Cir. 1951): "The trustee ... may not blow hot and cold. If he accepts the contract, he accepts it *cum onere.* If he receives the benefits, he must adopt the burden. He cannot accept one and reject the other." This general rule is applicable to the instant proceeding before this court. Acceptance of the lease does not allow its modification.

As discussed earlier, § 365(h) allows the lessee to "remain in possession for the balance of the term ... and any renewal or extension of such term that is enforceable by such lessee under applicable nonbankruptcy law." The instant lease is due to expire on August 31, 1982. *See* Exhibit M. Paragraph 23 of the lease, however, provides for five additional renewal terms of one year, which would effectively extend the lease to August 31, 1987. Metropolitan has expressed its intention to exercise each of the five one-year renewal terms.

The right of a lessee to exercise a renewal option has been upheld in the State of Michigan. *See In re Mackie's Petition,* 372 Mich. 104, 125 N.W.2d 482 (1963); *Bowden v. Trumpour,* 344 Mich. 133, 73 N.W.2d 462 (1955); *Maas Bros. Inc. v. Weitzman,* 288 Mich. 625, 286 N.W. 104 (1939); *Meadow Heights Country Club v. Hinckley,* 299 Mich. 291, 201 N.W. 190 (1924). Therefore, if LHD elects to accept the instant lease and Metropolitan exercises each of the re-

newal terms, the expiration date of the lease would be August 31, 1987.

This court is in agreement with Judge Schultz in *In re Pin Oaks Apartments*, 7 B.R. 364, 6 B.C.D. 1396 (Bkrtcy.S.D.Tex. 1980) that "[i]t would be dangerous precedent ... to be in the business of reforming [or terminating] contracts and leases because of changing economic circumstances. Depending on the peaks and valleys of our economic circumstances, the court would be considering in every case whether a contract was equitable or inequitable." *Id.* 7 B.R. 364, 6 B.C.D. at 1402. If this court allowed modification of the instant lease, it is possible that "[i]n three years, ten years, ... [a] party could return to court arguing that the contract required reformation again. The battle would continue during the entire life of the contract." *Id.* 7 B.R. 364, 6 B.C.D. at 1402. This court is loathe to "interfere so drastically in the commercial dealings of parties in arm's length transactions." *Id.*

In light of the foregoing, LHD's Complaint to Modify or Set Aside Lease is DENIED.

### Complaint for Relief from Stay

By its complaint Metropolitan seeks relief from stay pursuant to 11 U.S.C. § 362(d), in order to foreclose a mortgage it holds on the property which is the subject of this controversy ("Allen Park Property"). As alluded to earlier, the posture of the respective parties in the instant matter is somewhat unusual; Metropolitan is both the lessee and primary mortgagee. As lessee, Metropolitan wishes to remain in possession and exercise its renewal option for five additional one-year terms. As mortgagee, Metropolitan wishes to foreclose on its mortgage.

Title 11 of the U.S.Code, § 362(d) allows this court to grant relief from stay:

"(1) for cause, including the lack of adequate protection of an interest in property ...; or

(2) with respect to a stay of an act against property, if

(A) the debtor does not have equity in such property; and

(B) such property is not necessary to an effective reorganization."

The Allen Park Property has a potential value of approximately $240,000.00; this being the value of the property without the Metropolitan lease. *See* LHD's Exhibit 10. Due to the terms and effect of the lease, however, the current value is considerably lower. The rent provided for in the lease is insufficient to meet the operating costs and the amount needed for debt servicing (Metropolitan and Childs and Brown Mortgages). The effect on LHD is a negative cash flow of approximately $15,000.00 per year.

Based upon calculations made by Lambrecht Realty Corp., in its appraisal of the Allen Park Property and those made by LHD in its Brief, the court finds the property's current value to be approximately $119,000.00. This value takes into account that five years remain on the Metropolitan lease. The court further finds that as each year of the lease expires, the value of the property increases by approximately $20,000.00 to $24,000.00. *See* LHD's Exhibit 10 and LHD's Brief at pg. 28.

As of December, 1981—the date the parties stipulated to the admitted Facts and Exhibits—the balance due Metropolitan pursuant to its mortgage—including unpaid interest—is approximately $66,000.00. *See* Admitted Fact 24. The balance due the State of Michigan for property taxes—including penalties and interest—is approximately $46,000.00. *See* Admitted Facts 21 and 44. There exists a mortgage junior to Metropolitan's mortgage in the amount of $75,000.00, to secure notes given to Norma J. Childs and William G. Brown, trustee. *See* Admitted Fact 18. The balance of that mortgage—excluding unpaid interest—is approximately $75,000.00. *See* Admitted Fact 25.

The Metropolitan lease provides for a contribution of $500.00 per year by Metropolitan for property taxes paid by LHD. *See* Admitted Fact 9. LHD has not paid nor submitted proof of payment of property taxes levied for the years 1977 to the

present. *See* Admitted Fact 45. In its Brief, LHD maintains that property tax contributions totaling $2,000.00 were not paid by Metropolitan for the years 1977 to the present. The court hereby adopts that amount in its findings.

The parties have agreed that, as of July, 1981, LHD would sequester all income from the property over and above the normal operating and repair expenses. *See* Admitted Fact 23. As of January 15, 1981, the balance of the sequestered income account—after payment of current operating expenses—was $10,364.42. *See* LHD Exhibit 13.

■ After examining the above facts and figures it is the court's opinion that Metropolitan is adequately protected. The current value of the property and encumbrances relevant to the instant complaint are $119,000.00 and $112,000.00, respectively. Taking those figures into account and given that the value of the property will increase by a minimum of $20,000.00 per year as each year of the lease expires, it is clear that Metropolitan is adequately protected. In its Brief, Metropolitan maintains that it is entitled to relief from stay because of the negative cash flow LHD will continue to experience until the expiration of the lease in 1987. But for the $20,000.00 yearly increase in the property's value, the court would agree. The negative cash flow LHD is experiencing and will continue to experience is not severe enough to cancel out the $20,000.00 yearly increase in the value of the property. As the value of the property increases, the ratio of the liens of Metropolitan and the State of Michigan to the value of the property will decrease, thus assuring that in the event of liquidation Metropolitan will realize the full value of its mortgage.

It is important to note that the current value of the property is kept artificially low by Metropolitan through its exercising of the five additional year-term renewal option. For this reason the court believes that Metropolitan is not, therefore, in a position to claim lack of adequate protection when the cause of that alleged lack of adequate protection primarily lies with Metropolitan itself.

■ As to the issue of whether LHD has any equity in the property, it is clear at this point in time that it does not. The court does, however, find that the property is necessary to an effective reorganization. Lack of equity, alone, therefore, will not serve to afford Metropolitan relief from stay.

In light of the foregoing, Metropolitan's Complaint for Relief from Stay is DENIED.

The foregoing represents Findings of Facts and Conclusions of Law as required by Bankruptcy Rule 752.

In addition to requesting relief from stay, Metropolitan also requests that the court order the sequestering of rentals received from the Allen Park Property. Since the parties have stipulated to such sequestration and the court has adopted the parties' stipulations, it is unnecessary for the court to issue said order.

It is therefore, ORDERED, ADJUDGED AND DECREED that:

1. LHD Realty Corporation's Complaint to Modify or Set Aside Lease is hereby DENIED;

2. Metropolitan Life Insurance Company's Application for Leave to Foreclose Mortgage (Complaint for Relief from Stay) is DENIED; and

3. Metropolitan Life Insurance Company's Application for Order Sequestering Rentals for Use and Benefit of Real Estate and Improvements is hereby ALLOWED.