[L. A. No. 17452.  In Bank.—July 24, 1940.]

PACIFIC VENTURE CORPORATION (a Corporation), Appellant, v. JOHN W. HUEY et al., Respondents.

Betts & Garrison for Appellant.

Andrew J. Copp, Jr., Robert E. Austin and John N. Helmick for Respondents.

CARTER, J.—Plaintiff brought this action to recover the sum of $2,500 which it claimed to be due it from defendants pursuant to a contract entered into on the 15th day of July, 1936, between plaintiff's assignors, M. E. Rogers and John A. Hassell, and defendants Huey and Urie for the sale of their interest in certain mining claims situated in Santa Cruz County, Arizona. In said contract defendants Huey and Urie agreed to pay plaintiff's assignors as the purchase price for their interest in said mining claims, the sum of $1891.90 upon the execution of said contract and the further sum of $2,500 either out of 10 per cent of the royalties received by said defendants Huey and Urie from said mining claims or out of the final payment on the purchase price of said mining claims in the event that the same were sold by defendants Huey and

Urie before said defendants had paid said Rogers and Hassell said sum of $2,500 out of said 10 per cent of said royalties. Defendants Huey and Urie paid Rogers and Hassell said sum of $1891.90 upon the execution and delivery of said agreement, but said defendants received no royalties from said mining claims and made no further payment on account of the purchase price thereof to Rogers and Hassell or plaintiff.

The trial court found that on January 10, 1938, Huey and Urie entered into an agreement with defendant Albert Beck, which agreement was dated July 24, 1937, and provided for the exchange of said mining claims for certain property owned by Beck, and Beck thereby agreed to pay plaintiff or its assignors the sum of $2,500 to cover the balance of the purchase price of said mining claims. Said agreement provided:

"Huntington Park, California
"July 24, 1937
"AGREEMENT

"In consideration of $1.00, and other good and sufficient considerations, I, Albert Beck, do hereby agree that the final and last payment on the deal whereby Albert Beck is exchanging certain equities in one apartment house at 1102 West 41st Place, Los Angeles, and 80 acres of land in Imperial Valley subject to their respective mortgages or trust deeds, etc., and as the final and last payment for certain mining claims, etc., in Santa Cruz County, Arizona, due John W. Huey and George G. Urie, Albert Beck hereby agrees to pay to the Pacific Venture Co. or their assigners or successors in interest, the $2,500.00 mentioned in that certain agreement between John W. Huey, George G. Urie and Pacific Venture Co. and or M. E. Rogers and John A. Hassell dated July 15, 1936.

"Albert Beck agrees to pay this $2,500.00 as per the terms and conditions provided in said contract to the legal owners or holders of the above-mentioned contract, which shall complete the final and last payment to Huey and Urie for above described mining claims. The quit-claim deed to be delivered to Albert Beck or his assigns for the interest owned by Huey and Urie in the above mentioned mining claims carries only Huey and Urie's interest after this agreement has been signed and delivered and the complete title to said aforesaid mining claims has been paid for by carrying out of payment as per

conditions of the contract between Huey, Urie and Pacific Venture Co. and or M. E. Rogers and John A. Hassell.

"ALBERT BECK,

"JOHN W. HUEY,

"GEORGE G. URIE."

The sum of $2,500 was not paid plaintiff or its assignors and this action was commenced on February 14, 1938.

The trial court found the foregoing facts and adopted the following conclusions of law:

"That under the terms of said agreement of the 15th day of July 1936, between M. E. Rogers and John A. Hassell and John W. Huey and George G. Urie, two sources were designated out of which the payment of the sum of $2,500.00 should be made by defendants, John W. Huey and George G. Urie, to said M. E. Rogers and John A. Hassell, as follows:

"(1) Ten per cent (10%) of the royalties received by the defendants, John W. Huey and George G. Urie, from said mining claims; and

"(2) Final payment of the sales price of said mining claims.

"That subsequent to the date of said agreement, namely, the 15th day of July, 1936, and prior to the date of the filing of the above entitled action, or the filing of plaintiff's First Amended Complaint herein, the defendants, John W. Huey and George G. Urie, received no royalties from said mining claims, and said defendants have not received the final payment of $2,500.00 of the sales price of said mining claims;

"That by reason thereof, neither source of the payment of said sum of $2,500.00 by the defendants, John W. Huey and George G. Urie to M. E. Rogers and John A. Hassell, had materialized prior to the filing of plaintiff's complaint or the filing of plaintiff's First Amended Complaint herein.

"That the legal effect of the agreement dated the 24th day of July, 1937, and entered into on the 10th day of January 1938, between the defendants, John W. Huey and George G. Urie, and the defendant, Albert Beck, so far as the defendant, Albert Beck, was concerned was and is that the defendant, Albert Beck, guaranteed the payment by the defendants, John W. Huey and George G. Urie to M. E. Rogers and John A. Hassell of said sum of $2,500.00 when, as and if the same became due from the defendants, John W. Huey and George G.

Urie to M. E. Rogers and John A. Hassell under said agreement of July 15th, 1936.''

Judgment was entered that plaintiff recover nothing against the defendants or any of them and plaintiff prosecutes this appeal on the judgment roll alone.

Plaintiff contends that upon the execution of the agreement dated July 24, 1937, between defendants Huey and Urie and Beck, it was entitled to the immediate payment of the sum of $2,500 as the balance of the purchase price of the interest in said mining claims which its assignors had sold defendants Huey and Urie pursuant to the agreement of July 15, 1936. It takes the position that the effect of the transaction between Huey and Urie and Beck was to divest Huey and Urie of all right, title and interest in and to the mining claims in question, and thereby make impossible the operation of the mining claims by them and consequently put it out of their power to perform their contract of July 15, 1936, with plaintiff's assignors, and that since the balance of the purchase price was required to be paid upon the sale of the mining claims, said payment became due and payable upon the execution of the agreement dated July 24, 1937, which, in effect constituted a sale or exchange of said mining claims by Huey and Urie to Beck.

Defendants contend that since the agreement between plaintiff's assignors and Huey and Urie provided that the balance of the purchase price of the mining claims be paid out of specific sources, such payment would not become due until such sources materialized, and that, in view of the fact that such sources had not materialized before the commencement of the action, the action was prematurely brought; in other words, that under the terms of the agreement between plaintiff's assignors and Huey and Urie, the balance of the purchase price of the mining claims was to be paid first out of 10 per cent of royalties received by said defendants from said mining claims, or out of the final payment of the purchase price of said mining claims in the event that said claims were sold by said defendants before said defendants had paid plaintiff's assignors the sum of $2,500 out of said royalties.

There can be little doubt but that it was the intention of the parties to the agreement dated July 24, 1937, to effect a sale or exchange of the mining claims in question from Huey and Urie to Beck and that Huey and Urie thereby parted

with all of their interest in said mining claims and Beck became the owner thereof, subject to the payment of the sum of $2,500 to plaintiff or its assignors. Such being the case, the question arises as to whether or not Huey and Urie, as well as Beck, became obligated to pay plaintiff the balance of the purchase price of said mining claims upon the execution of the agreement dated July 24, 1937. We are of the opinion that upon the execution of said agreement, which effected a sale of said mining claims from Huey and Urie to Beck, all three of said defendants thereby became obligated to pay the balance of the purchase price due plaintiff's assignors pursuant to the agreement of July 15, 1936.

While said last-mentioned agreement makes no provision for the operation of the mining claims by Huey and Urie and fixes no specific date for the payment of the balance of the purchase price in the event the claims are not operated, it does provide that in the event of the sale of said claims prior to the payment to plaintiff's assignors of said sum of $2,500 from royalties, plaintiff's assignors shall be paid said sum out of the final payment of said purchase price. In other words, Huey and Urie had the right to sell the claims, but upon the consummation thereof, plaintiff's assignors were entitled to receive $2,500 out of the final payment of the purchase price for which said claims were sold.

By the sale of the claim to Beck, the right to pay plaintiff's assignors the balance of $2,500 on the purchase price out of royalties thereupon ceased, and plaintiff's assignors thereupon became entitled to receive said sum of $2,500 out of the purchase price paid by Beck for the claims; and, in the absence of an agreement that this payment be deferred, it became due and payable immediately. (Civ. Code, sec. 1657.) In other words, the agreement of July 15, 1936, contemplated that the claims would be sold for a price of $2,500, or more, in order that there be a sufficient amount available to pay plaintiff's assignors the balance due them. While no time was specified in the agreement of July 15, 1936, for the payment of this balance, it became due and payable by operation of law when the sale of the claims was consummated pursuant to the agreement of July 24, 1937.

There is no merit in the contention of the defendants Huey and Urie that plaintiff is not now entitled to receive the balance of $2,500 on the purchase price of said claims because

said amount has not been received by them, as they, by their voluntary act have surrendered control of said claims and rendered it impossible for them to obtain the balance of the purchase price therefor in any other manner than by receiving it from Beck.

By the execution of the agreement of July 24, 1937, Huey and Urie made it impossible for them to pay the balance of the purchase price to plaintiff's assignors out of royalties, and unless they made other provision for the payment of such balance, a cause of action thereupon accrued against them in favor of plaintiff.

It appears to be well settled that a person cannot avoid liability for the nonperformance of an obligation by placing such performance beyond his control by his own voluntary act.

This rule is thus stated in 13 Corpus Juris at pages 647, 648:

" 'A party to a contract cannot take advantage of his own act or omission to escape liability thereon . . . where he prevents a fulfillment of a condition precedent, or its performance by the adverse party, he cannot rely on such condition to defeat his liability.' "

The same proposition of law is announced in 12 American Jurisprudence at page 885, as follows:

" 'One who makes impossible the performance or happening of the condition precedent upon which his liability by the terms of the contract is made to depend, cannot avail himself of its non-performance.' "

The rule announced above has been uniformly followed in this state. (See *Carl* v. *Eade*, 81 Cal. App. 356 [253 Pac. 750], where the cases supporting this rule are cited and applied.)

Under the terms of the agreement of July 15, 1936, Huey and Urie assumed the obligation of securing to plaintiff's assignors the payment of $2,500 upon the sale of the mining claims in question. While they made provision for such payment in the agreement of July 24, 1937, said amount has not yet been paid, and plaintiff is entitled to judgment against them as the original obligors under the terms of the agreement of July 15, 1936, for the reason that they have voluntarily placed beyond their control the payment of said sum of $2,500 pursuant to the terms of said agreement.

██ Plaintiff is also entitled to judgment against defendant Beck under the terms of his agreement of July 24, 1937, as the obligation assumed by Beck in said agreement was for the benefit of the plaintiff or its assignors and is clearly enforceable by plaintiff by virtue of the provisions of section 1559 of the Civil Code, which provides:

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."

The case of *Washer* v. *Independent Mining & Development Co.,* 142 Cal. 702 [76 Pac. 654], appears to be strikingly in point in support of the legal proposition that plaintiff has the right to recover from Beck the balance of the purchase price which Huey and Urie agreed to pay plaintiff's assignors upon the sale of said claims. In the Washer case, *supra,* plaintiff had advanced money to the owner of a mine under an agreement that the amount would be repaid him out of the purchase price of the mine when it was sold. The defendant purchased the mine and adopted a resolution providing for the payment of the amount which plaintiff had advanced, but later refused to pay plaintiff said amount and defended the action upon the theory that there was no privity of contract between it and plaintiff for the payment of said amount. This court held that plaintiff was entitled to recover from defendant under the provisions of section 1559 of the Civil Code. In said case this court said at page 707:

"The defendant contends that neither the allegations of the complaint nor the findings show that its grantors were personally liable to plaintiff for the advances made by him, and that there is nothing in either the complaint or findings to show any privity of contract between defendant and plaintiff, and hence there was no consideration for the assumption by defendant of the indebtedness due to plaintiff. Such position is not tenable. The defendant knew of plaintiff's claim, and the contract out of which it arose. It knew, by the contract under which plaintiff made the advances, that plaintiff was to be given a one-fourth interest in the mines. Knowing these facts, it passed resolutions in due form by which it expressly assumed the payment of the amount due plaintiff. It did this before it purchased the mines. Then in its deeds it was recited that the property was taken subject to the agreement made by Stephens and Banta with plaintiff. It has

never paid plaintiff, and has refused to pay him. It has the title to the mines, procured by virtue of its resolutions, assuming the amount due plaintiff, and yet refuses to pay such amount. It will not be allowed to keep the property and refuse to pay for it as it agreed." (See, also, Cal. Jur., vol. 6, sec. 279.)

The rule announced in the Washer case, *supra,* is clearly applicable to the case at bar and supports plaintiff's contention that it is entitled to judgment against defendant Beck for the unpaid balance of $2,500 on the purchase price of the mining claims in question.

Defendants Huey and Urie contend that because the trial court did not find that plaintiff's assignors had assigned their interest in the contract of July 15, 1936, to it, plaintiff has no interest in the subject matter of this action. It is true that the trial court failed to find on this issue, but in view of the fact that the findings were prepared by counsel for defendants, we do not feel that they can, with very good grace, raise this point even if it were meritorious. However, the point is entirely without merit, as the contract between Huey and Urie and Beck, of July 24, 1937, provides that:

"Albert Beck hereby agrees to pay to the Pacific Venture Company, (plaintiff herein) or their assignors or successors in interest, the $2,500.00 mentioned in that certain agreement between John W. Huey, George G. Urie and Pacific Venture Company, and/or M. E. Rogers and John A. Hassell, dated July 15, 1936." This provision is clearly sufficient to vouchsafe a cause of action on behalf of the plaintiff against all of the parties to said agreement.

This is obvious for the reason that the only parties to the agreement of July 15, 1936, were M. E. Rogers and John A. Hassell as first parties and John W. Huey and George G. Urie as second parties. The agreement of July 24, 1937, recognizes the Pacific Venture Company, plaintiff herein, as being entitled to the benefits to which Rogers and Hassell were entitled under the agreement of July 15, 1936, by the following provision to wit:

"Albert Beck hereby agrees to pay Pacific Venture Company or their assignors or successors in interest, the $2,500 mentioned in that certain agreement between John W. Huey, George G. Urie and Pacific Venture Company, and/or M. E. Rogers and John A. Hassell, dated July 15, 1936." As this

agreement was signed by defendants Huey and Urie, it constituted an admission on their part that Pacific Venture Company had succeeded to the interest of Rogers and Hassell covered by the agreement of July 15, 1936, and since Huey and Urie were obligated to pay Rogers and Hassell $2,500 pursuant to the terms of said last-mentioned agreement, they are liable to plaintiff pursuant to their admission in the agreement of July 24, 1937, that plaintiff had succeeded to the interest of Rogers and Hassell covered by the agreement of July 15, 1936.

Plaintiff contends that the agreement of July 24, 1937, between Huey and Urie and Beck creates a lien upon the mining claims in favor of plaintiff for the unpaid balance of $2,500 on the purchase price thereof. We cannot agree with this contention, as it does not appear from the terms of the agreement of July 15, 1936, between plaintiff's assignors and Huey and Urie that any claim of lien on said mining claims was reserved by plaintiff's assignors or that said property was impressed with any lien which plaintiff's assignors could enforce against said property. As we interpret said contract, plaintiff's assignors conveyed all of their right, title and interest in said mining claims to Huey and Urie so that the latter had the full power of disposition over them and plaintiff's assignors were entitled to the payment of the balance of the purchase price as a personal obligation of Huey and Urie. We do not construe the agreement of July 24, 1937, between Huey and Urie and Beck as creating a lien on said mining claims to secure the payment of the balance of the purchase price due plaintiff's assignors.

The judgment is reversed with directions to the trial court to enter judgment in favor of plaintiff and against defendants Huey, Urie and Beck for the sum of $2,500, with interest thereon at the legal rate from the 10th day of January, 1938.

Curtis, J., Edmonds, J., Shenk, J., and Gibson, C. J., concurred.

Rehearing denied.