[L. A. No. 18813.   In Bank.   Feb. 23, 1945.]

RICHARD BEWICK, Respondent, v. PEARL MARGARET MECHAM, as Executrix, etc., Appellant.

Claflin, Dorsey & Campbell, Dorsey & Campbell, Allan Campbell and J. R. Dorsey for Appellant.

Harvey, Johnston & Baker, T. N. Harvey and Carl Johnston for Respondent.

TRAYNOR, J.—J. J. Lopez leased real property in the city of Bakersfield to S. S. Lombard for the operation of an automobile supply and service station or other business, for a period of ten years commencing July 1, 1929. The lessee was authorized to construct buildings and other improvements on the land and to remove them at the end of the term. The trial court found that the lessee spent $13,500 for structures on the land, relying on a provision in the lease giving him an option to purchase the land upon the expiration of the lease "at a price and terms then to be agreed on between the parties hereto, and if not agreed on then to be fixed by arbitration, each of the parties hereto selecting one arbitrator, and the two selected [sic] a third, which said arbitrators shall fix such purchase price and the terms under which the purchase may be made, but with the proviso that on the matter of terms at least one-half of such purchase price shall be payable in cash, and the remaining half to be evidenced by promissory note secured by deed of trust, and to draw not less than the legal rate of interest." Any assignment of the lease and the option to purchase was subject to the lessor's written consent. Lombard assigned to plaintiff his interest in "the indenture of lease," with the lessor's written consent. When plaintiff exercised the option to purchase the land at the end of the term the lessor refused to sell. Upon the lessor's refusal to comply with his obligation under the option agreement plaintiff appointed an arbitrator to fix the price and terms of purchase. This arbitrator with two others fixed the purchase price and the terms for the payment of that part thereof that was not payable in cash. On defendant's motion, however, the court vacated their decision on the ground that the arbitrator allegedly appointed by the lessor was not duly appointed by him. (*In re Bewick*, 49 Cal.App.2d 287 [121 P.2d 815].) Thereafter plaintiff renewed his effort to have the price and terms of purchase determined by arbitrators in the manner

provided in the agreement by reappointing the arbitrator whom he had formerly appointed and demanding that defendant appoint an arbitrator. When defendant refused, plaintiff brought this action to have the court fix the purchase price and decree specific performance of the contract, and offered to pay in cash the entire purchase price fixed by the court. The trial court fixed the price at $9,000 and ordered defendant to perform the contract. Defendant, as executrix of the estate of J. J. Lopez, appeals from the judgment.

Defendant contends that the trial court lacked jurisdiction to decree specific performance of a contract of a decedent during administration of his estate on the ground that the probate court had exclusive jurisdiction of the matter. A demand for specific performance of a contract of a decedent by conveyance or transfer of property in the possession of the administrator or executor differs from a claim of a general creditor seeking satisfaction out of the assets of the estate. (Prob. Code, § 700 et seq.; *Estate of Dutard,* 147 Cal. 253, 257 [81 P. 519]; *Mix* v. *Yoakum,* 200 Cal. 681, 685 [254 P. 557]; *Porter* v. *Van Denburgh,* 15 Cal.2d 173, 177 [99 P.2d 265]; *Estate of Bailey,* 42 Cal.App.2d 509, 511 [109 P.2d 356]; see 34 A.L.R. 385, 386; 21 Am.Jur., Executors and Administrators, § 348.) Under section 850 of the Probate Code, the probate court may make a decree "authorizing and directing the executor or administrator" specifically to perform a written contract of the decedent by conveying or transferring property to the person entitled thereto under the contract. This section authorizes the executor or administrator under the supervision of the probate court to transfer title to property in fulfillment of a written contract of the decedent without joining the beneficiaries of the estate to whom the title has passed at the death of the decedent (see Prob. Code, § 300; Pomeroy, Specific Performance of Contracts (3d ed.) § 497). "This special statutory remedy conferring upon the probate court administering the estate jurisdiction to grant specific performance in cases where the right of petitioner in the premises is free from doubt . . . would seem to be a wise provision; it evidently tends to save the expense and delay that would follow a separate action in equity for a specific performance." (*Estate of Garnier,* 147 Cal. 457, 459 [82 P. 68]; see 11B Cal.Jur. 200.) "The proceeding is suited to cases

of ordinary contracts where there is no real controversy as to the obligations of the respective parties, . . ." (Pomeroy, *ibid.*, p. 993.) Before the enactment of the Probate Code former section 1602 of the Code of Civil Procedure provided that if the probate court found that the asserted right was doubtful it must dismiss the petition without prejudice and that the claimant had six months after the dismissal in which to bring suit for specific performance in a court of competent jurisdiction. Since an intention of the Legislature to change the character of the proceeding in the probate court does not appear by express declaration or necessary implication it must be presumed that the Legislature did not intend to transform the proceeding in the probate court to facilitate the conveyance or transfer of property during the administration of the estate into a proceeding to determine controversies as to whether the executor must specifically perform a contract made by the decedent. (See *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 644 [122 P.2d 526]; Prob. Code, § 852; 11B Cal.Jur. 206; see, also, *Raginsky* v. *Lawler,* 313 Ill. 441 [145 N.E. 189]; *Church of Christ* v. *Beach,* 7 Wash. 65 [33 P. 1053].)

Defendant contends that the assignment of the lease by Lombard to plaintiff did not carry with it the option to purchase the land. The assignment named as its subject matter "the indenture of lease." "The assignment of the writings by which a contract is witnessed is the most common mode of transferring the contract, and cannot be understood as having any other intention." (*Blakeman* v. *Miller,* 136 Cal. 138, 141 [68 P. 587, 89 Am.St.Rep. 120].) Moreover, an option to purchase the land during or at the end of the term operates to the benefit of the lessee as such, for he may erect buildings or other structures without losing their use at the end of the term, and it is therefore settled in this state that "an option covenant contained in a lease is a real covenant running with the land." (*Chapman* v. *Great Western Gypsum Co.,* 216 Cal. 420, 425 [14 P.2d 758, 85 A.L.R. 917]; see *Laffan* v. *Naglee,* 9 Cal. 662, 678 [70 Am.Dec. 678]; *Hall* v. *Center,* 40 Cal. 63; *Standard Oil Co.* v. *Slye,* 164 Cal. 435, 442 [129 P. 589]; 15 Cal.L.Rev. 56; 2 Tiffany, Landlord and Tenant, § 267.) The separate reference in the agreement to the lessor's consent to an assignment of the option right prevented the lessee from claiming that he could assign the op-

tion to purchase without the lease. (See *Mott* v. *Cline*, 200 Cal. 434, 450 [253 P. 718] ; 15 Cal.L.Rev. 56.)

Defendant contends that plaintiff failed to make use of the statutory remedy under section 1283 of the Code of Civil Procedure to have an arbitrator appointed by the court when defendant refused to appoint an arbitrator and that the court could not fix a price when plaintiff had an adequate remedy to obtain the fixing of a price by arbitrators. Section 1283 of the Code of Civil Procedure allowing the court to appoint an arbitrator if one party has failed to make an appointment upon demand of the other is applicable, however, only if the parties have agreed to submit a controversy to arbitration within the meaning of section 1280 of the Code of Civil Procedure. Section 1280 requires that there be a controversy arising out of the contract or the refusal of one of them to perform the contract. It was not contemplated by the option agreement in the present case that the arbitrators should decide any controversy arising out of the option agreement or the refusal of the parties to perform. Their sole task was to determine the value of the land and to fix the purchase price accordingly and the installments for the payment of the credited part of the price. "A reference to a third person to fix by his judgment the price, quantity, or quality of material, to make an appraisement of property and the like, especially when such reference is one of the stipulations of a contract founded on other and good considerations, differs in many respects from an ordinary submission to arbitration." (*Palmer* v. *Clark*, 106 Mass. 373, 389; see, also, *Luedinghaus Lumber Co.* v. *Luedinghaus*, 299 F. 111, 113.) There is nothing in the agreement to indicate that the arbitrators were to take evidence in a formal proceeding as a basis for their decision rather than their own opinion and judgment. "Submissions to determine values are of two kinds—first, where the valuers are to examine the property and fix the value in accordance with their own opinion or judgment; second, where they are to afford the parties a hearing, and an opportunity to offer evidence, and are to adjudge the value upon a consideration of the evidence, as well as their own opinion. In cases of the first class, it is usually held that the agreement is not properly a submission to arbitration and is not subject to the rules which govern arbitrators. . . . *Church* v. *Seitz*, 74 Cal. 287 [15 P. 839], was a case of this class and it may be consid-

ered as establishing this doctrine in this state. (*See, also, Stockton etc. Works* v. *Glen Falls Ins. Co.*, 98 Cal. [557] 570 [33 P. 633]; *Foster* v. *Carr*, 135 Cal. 86 [67 P. 43].)'' (*Dore* v. *Southern Pacific Co.*, 163 Cal. 182, 189 [124 P. 817].) In *Church* v. *Seitz, supra*, where the agreement of the parties was similar to the present one, the court declared that the intention of the parties determined whether the property should be evaluated by formal arbitration or informal appraisal, and quoted from *Brink* v. *N. A. Fire Ins. Co.*, 5 Robt. (N.Y.) 123, as follows: ''There is scarely a day in which in commercial transactions the valuation of property, or estimate of damages, is not intrusted to third parties, and no one has yet dreamed of looking upon them as arbitrations, and subjected to all the formalities imposed on them . . ., with the paraphernalia of oaths, witnesses, and notices of trials. It is most frequently confined to the personal skill, knowledge, or experience, or even acquired information of appraisers.'' (P. 296.) (See, also, *Gonzalez* v. *Gonzalez*, 174 Cal. 588, 594 [163 P. 993]; *Rives-Strong Building* v. *Bank of America*, 50 Cal.App.2d 810, 814 [123 P.2d 942]; 6 Williston on Contracts (1938 rev. ed.), § 1921 A; 17 Cal.L.Rev. 643; Sturges, Commercial Arbitrations and Awards, pp. 18-42.) In the present case it is clear that the parties intended not a formal arbitration, but an evaluation by appraisers whom they regarded as experienced and familiar with the conditions in question.

Defendant contends that the option agreement was too indefinite to give rise to a contract upon the exercise of the option, but that if there was a contract it established the exclusive method of ascertaining the price and terms of purchase. Since the plaintiff was willing to pay the entire price in cash the only question of uncertainty remaining concerned price. (See Restatement: Contracts, § 370, Illustration 1.) If the consideration is executory its determination may be left to a disinterested third person. (Civ. Code, § 1610.) The option covenant providing for the appointment of third persons to ascertain the price was therefore definite enough to give rise to a contract. The only question to be determined is whether defendant's failure to appoint an appraiser made the contract invalid or incapable of specific performance for want of certainty. (See *Hardy* v. *Hardy*, 23 Cal.2d 244, 247 [143 P.2d 701]; *Talmadge* v. *Arrowhead R. Co.*, 101 Cal. 367, 371 [35 P. 1000]; *Wineburgh* v. *Gay*, 27 Cal.App. 603 [150 P.

1003]; *Sarina* v. *Pedrotti,* 103 Cal.App. 203 [284 P. 472].)

In the present case the contractual method of ascertaining the purchase price became impossible of execution, not as the result of circumstances beyond the control of the parties, but because of defendant's refusal to appoint an appraiser, thus making impossible an appraisal as contemplated by the agreement. 'Defendant's refusal to participate in establishing the appraisement board was a violation of her contractual obligation to take the necessary steps to make the appraisement provision of the contract operative. ■ Each party to a contract has a duty to do everything that the contract presupposes that he will do to accomplish its purpose (*Epstein* v. *Gradowitz,* 76 Cal.App. 29, 32 [243 P. 877]; see Williston, Contracts (1937 rev. ed.) § 1293) and a duty not to prevent or hinder performance by the other party. (*Tanner* v. *Title Ins. etc. Co.,* 20 Cal.2d 814, 825 [129 P.2d 383]; see Williston, *op. cit.,* § 1293 A; 4 Cal.Jur. 10-Yr.Supp. (1943 rev.) 142.)

■ By making the appraisal impossible, defendant prevented the determination of the purchase price by the method contemplated by the contract. Defendant's obvious purpose was to make the contract inoperative and to prevent plaintiff from seeking specific performance after the price was determined by the appraisers. ■ A party who prevents fulfillment of a condition of his own obligation commits a breach of contract (*Alderson* v. *Houston,* 154 Cal. 1, 13 [96 P. 884]; *Pacific Venture Corp.* v. *Huey,* 15 Cal.2d 711, 717 [104 P.2d 641]; *Carl* v. *Eade,* 81 Cal.App. 356, 358 [253 P. 750]; Rest., Contracts, § 315) and cannot rely on such condition to defeat his liability. (*Pacific Venture Corp.* v. *Huey, supra; Carl* v. *Eade, supra;* 13 C.J. 647; 17 C.J.S. 966; 12 Am.Jur. 885.)

■ Moreover, section 1613 of the Civil Code prescribes that "Where a contract provides an exclusive method by which its consideration is to be ascertained, which method appears possible on its face, but in fact is, or becomes, impossible of execution, such provision only is void; . . ." Under this section impossibility of ascertaining the price by the contractual method does not preclude a court from giving effect to the contract, ascertaining the consideration in place of the arbitrators or appraisers. Determination of the value of the property is a common task of courts in condemnation, partition, and other proceedings. If equitable considerations support the position of one who seeks specific performance, par-

ticularly if he has previously changed his position in reliance on the contractual right that he seeks to enforce, courts of equity will assume the task of ascertaining the consideration if it has become impossible of ascertainment by the method provided in the contract. Thus it was said in *Kaufmann* v. *Liggett*, 209 Pa. 87, 102 [58 A. 129, 134, 103 Am.St.Rep. 988, 67 L.R.A. 353]: "the authorities well agree that equity will not compel an arbitration, and this upon the very good ground that the courts remain open to the parties, with better provisions for securing justice than are possessed by arbitrators, but that in case of renewal leases the weight of authority clearly favors the view that the tenant in such a case has a quasi proprietorship—a right, merely lacking a valuation—and that the grossest inequity would be worked, should he lose his right through a failure upon the part of the arbitrators to fix a valuation. While, therefore, a court of equity will not undertake to compel an arbitration, which it cannot control, it will in such case make an appraisement itself, or direct it to be done by its own officer, and will thereafter enforce specific performance of the contract upon the terms so found." While earlier English cases followed the leading case of *Milnes* v. *Gery*, 14 Ves.Jr. 400, in holding that courts would not fix the purchase price of land if the contract provided for its determination by arbitration and the arbitration had failed, that doctrine was not adopted in this country and has in England given way to the tendency of later English decisions "to consider these stipulations for a determination of the price by third persons, rather as matters of form than of substance; to construe them in such manner that they become incidental only to the main object of the agreement." (Pomeroy, Specific Performance of Contracts (3d ed.) § 151.) In *Coles* v. *Peck*, 96 Ind. 333, 339 [49 Am.Rep. 161], where a lessee who had erected a building on the land sought specific performance of an option agreement authorizing him to purchase the land, the court referred to *Milnes* v. *Gery, supra,* saying: "The doctrine of that case has, however, generally been followed by the courts of the United States, only in a limited and restricted sense, and is mainly applied only to contracts for reference in which, by the form and language of the stipulation, the mode of determining the price by values, on arbitration, is made an essential provision—in fact condition—to the validity of the agreement, and to cases in which

the parties can be easily placed in statu quo, or where an action for damages can be made to afford an adequate remedy.'' The doctrine of these cases has been followed in this state (*Streicher* v. *Heimburge*, 205 Cal. 675, 679 [272 P. 290]; *Glenn* v. *Bacon*, 86 Cal.App. 58 [260 P. 559]; see, also, *Security Trust & Sav. Bank* v. *Claussen*, 44 Cal.App. 730, 734 [187 P. 142]), and is supported by the weight of authority (see cases collected in Pomeroy, *op. cit.*, § 151; 30 A.L.R. 572, 580; see, also, *Maas Bros.*, v. *Weitzman*, 288 Mich. 625 [286 N.W. 104]).

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied March 22, 1945. Carter, J., voted for a rehearing.