[Civ. No. 6523.   Fourth Dist.   May 25, 1961.]

BAKERSFIELD COUNTRY CLUB (a Corporation), Respondent, v. PACIFIC WATER COMPANY (a Corporation) et al., Appellants.

Moss, Lyon & Dunn, George C. Lyon, Henry F. Walker, Baker, Palmer, Wall & Raymond and Oran W. Palmer for Appellants.

John M. Nairn for Respondent.

SHEPARD, J.—This is an appeal by defendants and cross-complainants from a judgment in an action in declaratory relief, brought to determine the rights and duties of the parties relative to installation of water lines for water service to a tract subdivision numbered 1517 (hereinafter called "Tract"), and who should bear the cost thereof. The action was commenced February 19, 1959, by the above plaintiff and each of the respective defendants separately answered and cross-complained, praying essentially the same relief except that each desires the other to pay the cost.

In general substance, the facts revealed by the record before us are as follows: In 1951 Bakersfield Country Club Improvement Company owned Tract. On May 12, 1951, and by amendment of May 28, 1951, it executed a contract (hereinafter called "Contract 1") with Mountain Properties, Inc. (hereinafter called "Mountain") to secure a system of water supply for Tract from the water system by which Mountain served East Bakersfield. Plaintiff Bakersfield Country Club (hereinafter called "Club") became and is the successor in interest of Bakersfield Country Club Improvement Company.

By Contract 1 Mountain agreed, *inter alia*, to install pipe and equipment for Tract as required for water service to constructed homes. Under said Contract 1 Club furnished to Mountain pipe of the then value of $33,526.50 and cash in the sum of $28,473.50, or a total value of $62,000. Mountain agreed to repay Club 35 per cent of Tract water consumer payments to Mountain during the immediately ensuing ten years, but not exceeding said sum of $62,000. Subsequently Mountain sold to defendant Pacific Water Company (hereinafter called "Pacific"), and Pacific assumed all obligations of Mountain under said Contract 1. Mountain and Pacific together, by May 31, 1955, had installed pipe and equipment in Tract to a value of $48,593.92 pursuant to such Contract 1. The pipe thus installed had a gross value of $29,578.25, or $3,948.25 less than the value of the pipe received from Club.

September 21, 1955, defendant East Niles Community Services District (hereinafter called "District") executed a contract (hereinafter called "Contract 2") with Pacific to buy from Pacific the East Bakersfield water system from which Tract (together with other areas) was served. Pacific is the owner and operator of some 22 water systems. Contract 2 involved the purchase of only one of such systems. By para-

532

graph 2 of Contract 2 (see note below* for paragraphs of Contract 2 material to this controversy) it was agreed, *inter alia,* that by the purchase price of $493,800 District would acquire ownership of all assets of the water system here involved shown as of May 31, 1955, on Pacific's books and belonging to this particular system. Any installations made by Pacific after May 31, 1955, were to be paid for by District. By paragraph 2(d) Pacific agreed to fulfill its obligations under Contract 1, but the cost of any such installations made after May 31, 1955, would be paid by District. It will be noted that Contract 2 provides that "A list setting forth the installed cost of the assets which are included on the books of Company as of May 31, 1955, is set forth on the balance sheet of Company of May 31, 1955, which is attached hereto and made a part hereof, marked Schedule A."

Neither the body of Contract 2 nor Schedule A attached thereto contains any reference to assets on hand as of May 31, 1955, in the form of uninstalled pipe. The footage of installed pipe shown in said Schedule A is 9,503, which agrees with the

*"2. The purchase price for said water system shall be as follows:

"(a) The purchase price of the assets which were on the books of Company on May 31, 1955, in the sum of Four Hundred Ninety Three Thousand, Eight Hundred Dollars ($493,800.00).

"(b) The purchse price of assets which are placed on the books of the corporation after May 31, 1955, to the date of transfer of possession is the installed cost of said assets.

"(c) The purchase price of all assets which are contracted for by Company prior to transfer of possession, but not yet installed at the time of transfer of possession shall be the installed cost of such assets, to be paid to Company as such assets are installed and transferred to the District after transfer of possession. All such contracts are to be performed according to their terms, providing, however, that any installation contract in excess of Five Hundred Dollars ($500.00) made after the signing of this agreement for purchase and sale between the District and the Company shall be made in accordance with the recommendations of the engineer of the District so long as such recommendations conform with good engineering practice. In case of dispute, the recommendation of a hydraulic engineer of the Public Utilities Commission shall be final and binding upon the parties.

"(d) The 'installed cost' of assets under subsections (b) and (c) above shall be determined as follows:

"(1) Where the installation was made by a person other than Company and then transferred to Company, it shall be determined upon the basis of invoices of installed costs submitted to Company and District, and approved by Company and District; or in the case of dispute, by a hydraulic engineer of the Public Utilities Commission.

"(11) Where the installation was done by Company, it shall be determined on the basis of invoices showing the costs of materials, subcontracts, and charges for equipment, and upon payrolls showing the cost of labor, including compensation and liability insurance and labor

footage of pipe shown by the evidence to have been admittedly installed by Pacific. Accounts of Pacific were in standard form prescribed by Public Utilities Commission. The advances from Club to Pacific were carried under Account Number 241. Account Number 241 is not shown in the list attached as said Schedule A. Contract 2 was executed after months of negotiation and after full examination of Pacific's accounts by District's representatives.

In July 1956, Pacific and Club entered into a settlement agreement (hereinafter called Contract 3), by which Pacific repaid to Club the sum of $14,000 and received settlement in full for any remaining obligation it might have for payment to Club of 35 per cent of consumer collections, as provided by Contract 1.

Apparently late in 1956 a dispute arose between Pacific and District as to whether or not Pacific had actually delivered to District all of the assets purchased by District under Contract 2. On February 18, 1957, after some months of conferences and negotiations, a Mutual Release (hereinafter called Contract 4) was signed by the president and secretary of District and of Pacific, which recites, in general substance, that for a valuable consideration each party does release and

taxes, used in the installation, plus overhead at 10% on the cost of pumps and tanks and overhead at 15% on all other installations. Provided, however, that as to future installations, District may elect to contract the work on jobs in excess of Five Hundred Dollars ($500.00).

''2a. It is understood that Bakersfield Country Club Improvement Company, a California corporation, and Mountain Properties, Inc., the predecessor of Company, on May 12, 1951, entered into an Agreement whereby Company's predecessor was to install certain pipelines and other water equipment on and in Tract 1517, Kern County, and was paid therefor certain sums of money. Company agrees that it will fulfill its obligations under said contract and will, pursuant to the provisions of Paragraph 2 hereof, invoice District for the cost of installations placed on the books of Company after May 31, 1955; provided, however, that District, at its option, may make installations under said contract after transfer of possession herein, in which event instead of Company invoicing the District for the installed cost thereof, such installations so made by District shall vest in District as a successor of Company under said contract of May 12, 1951.

''5. Said water system and the assets thereof shall consist of all operative and non-operative wells, together with the real property hereinafter described, all pumps, motors, tanks, reservoirs and buildings, all distribution mains, valves and hydrants, all house services, meters and meter boxes and valves, tools, equipment and facilities, all water service, distribution, construction and other records, plans and customer listings, water, water rights and rights to water, and all other property of whatsoever nature and wheresoever situate belonging to and a part of said water system, but not including office furniture as set forth in Account

discharge the other party "of and from all claims and demands, actions and causes of action, of every name and nature, so that neither of them shall have any claim on the other, directly or indirectly, on any contract or supposed liability or thing undertaken, done or admitted to be done, from the beginning of the world to this day." This Contract 4 was pleaded by District, and a copy attached to its answer. Its execution is not disputed by any of the parties.

After trial, the court found, in substance, the facts above related as to execution of Contracts 1, 2, 3 and 4; the receipt and installation of pipe in Tract by Mountain and Pacific as above set out; that the sale under Contract 2 included pipe and equipment already installed; that District installed 3,240 feet of pipe in Tract after May 31, 1955, without making any demand on Pacific to make such installation; that no demand was made on Pacific for any further installation of pipe until November 14, 1958. The court concluded, in effect, that Pacific is still obligated to Club under Contracts 1 and 2 to install the additionally required pipe; that District has not exercised its option to install same; that District must pay to Pacific the installed cost of the new pipe to be put in; that District was entitled to receive at the time of the transfer from Pacific to District under Contract 2 all of the pipe transferred previ-

No. 372 of Company and transportation equipment as set forth in Account No. 373 of Company, or any of the general assets of Pacific Water Co. allocated to said water system. All said assets are sold to the District 'as is' without warranty as to condition or quality, but with warranty as to title, except as specified in Section 7 hereof. The District shall have the right to make copies, but shall not take the original records of any books and papers pertaining to past operations of the Company required to be kept by it for tax purposes or by the Public Utilities Commission. A list setting forth the installed cost of the assets which are included on the books of Company as of May 31, 1955, is set forth on the balance sheet of Company of May 31, 1955, which is attached hereto and made a part hereof, marked Schedule A. Company represents that said balance sheet sets forth the account numbers of all property being transferred herewith.

"10. Company agrees to hold District, its officers, agents and employees, harmless from any and all losses, damage, costs, and expenses, including court costs and attorneys' fees, which said District, officer, agents and employees may hereafter suffer, incur, be put to, pay or lay out by reason of any consumers' deposits or obligation under any contract for consumers' advances and reimbursements which does not become the obligation of District as herein provided.

"13. The sale of said water system shall be free and clear of existing contracts for consumers' advances and reimbursements. In order to make certain the sale is made free and clear of any such obligations, Company shall in accordance with the order of the Public Utilities Commission, deposit a sum in trust sufficient to refund or settle said advances.".

ously from Club to Mountain; that the pipe actually received from Pacific by District was $3,948.25 less in value than the amount it should have received and District is entitled to a credit against Pacific for that amount; and that Club must pay the cost of road repairs necessitated by new installations. The court refused to order attorneys' fees. Judgment was entered accordingly. On motion for a new trial, it developed that District elected not to install and Pacific was ordered to install and to commence work on such installation within 90 days.

Various conflicting points on appeal are raised by the different parties. Pacific contends: (1) that District by its installation of 3,240 feet of pipe after May 31, 1955, without any demand on Pacific to do the installing, has already elected to and has exercised its option to itself install the pipe and that under the principle incorporated in Civil Code, section 1450, District is now bound by such election. Pacific's second contention is that the evidence shows without contradiction (first) that the item of uninstalled pipe out of which the trial judge deduced an offset in favor of District for $3,948.25 was not and never was intended by District and Pacific to be a part of Pacific assets purchased by District under Contract 2; (second) that District never assumed Pacific's obligation to repay Club the $62,000 (of which the disputed pipe was a part) and therefore should not be held to be entitled to any benefits therefrom not specified in Contract 2; (third) that any unsettled dispute or obligations existing between Pacific and District on February 18, 1957, were fully and finally settled by Contract 4. Pacific's third contention is that because successive acts are required, specific performance may not be mandated.

District, in its appeal, contends, first, that it should have received credit for $22,630 as the unexpended portion of Club's advance to Pacific as shown by Pacific's books May 31, 1955; second, that Pacific should be compelled to install in accordance with District engineer's recommendation; and, third, that District, under the contract, is entitled to attorney's fees.

### OFFSET

The primary dispute between the parties appears to be on whether or not District should be granted the offset against the installed cost of pipe which District is required

to pay for under the terms of paragraphs 2(c) and 2(d) of Contract 2. Apparently the theory of the trial court in awarding District this offset of $3,948.25 was the difference in value of the pipe as received from Club by Mountain ($33,526.50) and the value of pipe actually installed by Pacific ($29,578.25). This can be supported only by the finding that District was entitled to all of such pipe so advanced, as above noted, by Club to Mountain.

A careful reading of the record shows that this sale occurred after months of negotiation, that there was no testimony that the pipe in question was on the books of Pacific as an asset on May 31, 1955. On the other hand, there is affirmative testimony, uncontradicted, that it was carried in Account Number 241; that it was removed from the books of Pacific when the system was sold by Pacific; that it was segregated but remained noted in some way in Account Number 241 because it was a trust liability; that it was carried as a liability instead of an asset. Other uncontradicted evidence shows that District was, during the negotiations for the purchase from Pacific, entirely aware of the existence of Contract 1. This is doubly certain because Contract 2 mentions the obligations under Contract 1 extensively. There is also uncontradicted testimony that prior to the signing of Contract 2, discussions were had about the $62,000 advance made by Club under Contract 1; that the presence of Club's pipe advance in Pacific's possession was discussed by District and Pacific representatives during the negotiations for purchase of the system by District and prior to the signing of Contract 2, and that such inventory of pipe and cash was not included in the transfer; that engineers representing District fully examined Pacific's books, appraised all of the assets being transferred, and did not include said uninstalled pipe in said appraisal of assets to be transferred to District under Contract 2. Likewise, it is to be noted that the parties, in order that there be no misunderstanding as to what assets were included in the purchase, attached to Contract 2 a list of assets included in the transfer, and the pipe here under discussion was not included in such list.

Still further, the failure to include in Contract 2 the advance made by Club to Mountain under Contract 1, is made clearly understandable by the fact that under paragraph 10 of Contract 2, the liability for repayment of said advance was squarely placed on the shoulders of Pacific and was not

assumed by District. Thus, the contract itself, as well as the sum total of the evidence, irrefutably shows that District did not intend to repay Club the 35 per cent of the first 10 years' water consumer revenue and did not, in fact, pay nor offer to pay one cent of this obligation at any time. This completely negates the theory advanced by District that Pacific would be unjustly enriched by Pacific's retention of the pipe. If such theory applies at all, it is in the reverse of that contention, since the advance carried with it the coordinate obligation to repay, and District did not assume that obligation. Thus it is District that would be unjustly enriched by receiving credit for said uninstalled pipe, and not Pacific.

There is no evidence nor offer of evidence of any kind that even remotely suggests that Pacific was guilty of fraud or concealment in the sale to District, nor that it did not fully show its books and all entries thereof. No evidence was produced to show mistake by District's engineers in the list of assets included under Contract 2. There is no suggestion that the price agreed upon was unfair or improper. District's own engineers appraised the physical assets as listed by them at $464,207.31, which appraisal did not include any value for going business nor organization. Replacement cost was placed by the same engineers at $624,572.89. The sale was for $493,800. Nothing in this suggests that District did not receive fair value.

The finding that District is entitled to the uninstalled pipe is entirely contrary to the uncontradicted evidence.

### RELEASE (Contract 4)

The evidence shows, without contradiction, that late in 1956 a dispute arose between District and Pacific as to whether or not all of the assets purchased by District had, in fact, been surrendered to District; that after conferences lasting a month or more on this dispute, there was signed a full and complete mutual release of all claims and obligations of the parties toward each other. There is no evidence of fraud or mistake in connection with this release. District itself pleaded the release *in haec verba*, attached to its answer, without any allegation that said release was without consideration. There is no allegation that it was obtained by fraud or mistake, or that it was in any way invalid. Any ownership claim District might have had for said uninstalled pipe was in existence May 31, 1955. Suggestions to the contrary do not take

account of either the evidence or the actual findings of the court. It is therefore entitled to full credence at its face value. (Civ. Code, § 1523; *Grayhill Drilling Co.* v. *Superior Oil Co.*, 39 Cal.2d 751, 753 [1a, 2] [249 P.2d 21]; *Costa* v. *Maggio*, 65 Cal.App.2d 456, 461 [4] [150 P.2d 905]; *B. & W. Engineering Co.* v. *Beam*, 23 Cal.App. 164, 171 [137 P. 624].)

### DUTY OF PACIFIC

The court correctly appraised the duty of Pacific to Club under Contract 1, and the concomitant duty of District to repay Pacific for any installations made after May 31, 1955, as is provided by paragraphs 2(c) and 2(d) of Contract 2.

### ENGINEER SUPERVISION

██ A review of the entire contractual history of the parties and the positions they presently occupy relative to the water system involved, convinces us that the preservation in District engineer of the right to make recommendations is reasonably necessary to accomplish the objects of the order. Pacific no longer has any operative interest in the system transferred to District. District is completely responsible for the present and future planning and operation of such system. District must pay cost of any new installations by Pacific. Any installation contrary to the plans of District would be frustrative of District's obligation to serve the water users of the district who, in final analysis, are the ultimately interested parties. Pacific can have no meritorious objection to District engineer's recommendations within the limits of good engineering practice since Pacific must be paid for its costs in any event. ██ A court of equity does not require, in order to enforce the contract, that every minor detail be set forth in the writing. The usual and reasonable conditions are in contemplation of the parties a part of their agreement. (*King* v. *Stanley,* 32 Cal.2d 584, 588 [4] [197 P.2d 321].) ██ As was said in *Bewick* v. *Mecham,* 26 Cal.2d 92, 99 [7] [156 P.2d 757, 157 A.L.R. 1277]:

"Each party to a contract has a duty to do everything that the contract presupposes that he will do to accomplish its purpose [citations] and a duty not to prevent or hinder performance by the other party."

If some minor disagreement not now foreseen does arise, arbitration is provided for in the contract, and if arbitration is refused, the trial court has the power to quickly settle the problem by its own action. (*Bewick* v. *Mecham, supra,* p. 100

[26 Cal.2d].) The installation should be done under District engineer's recommendations, within the limits of good engineering practices.

### ATTORNEY'S FEES

Throughout the trial, and in the pleadings, Pacific does not appear at any time to have rejected its own obligation to fulfill its contract to Club. The controversy appears to have arisen entirely through the claim of District that it was entitled to receive certain offsets on account of the advances from Club to Mountain. These cannot be sustained, as has hereinbefore been pointed out. The trial court's judgment in denying attorney's fees is correct.

### SPECIFIC PERFORMANCE

It is true that specific performance will not be decreed on a contract which calls for a series or succession of continuing acts which cannot be consummated in one operation and will require continuous and extended supervision. (*Lubin* v. *Lubin,* 144 Cal.App.2d 781, 791 [8] [302 P.2d 49]; *Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158, 171 [9] [88 P.2d 698, 89 P.2d 386]; *Whipple Road Quarry Co.* v. *L. C. Smith Co.,* 114 Cal.App.2d 214, 216 [2] [249 P.2d 854].)

In the case here at bar, however, by their stipulations and representations at the commencement of the trial, all counsel made clear to the court that the pipe lines are presently required; that Pacific is prepared, ready and willing to install them on proper assurance of compensation therefor; and that District has a known engineering plan for installation which can be followed without delay and in one general operation. The trial court then stated: "That doesn't leave anything except whether or not the District here is entitled to a credit on the cost." None of the counsel made any suggestion that this statement did not accord with their own understanding, and the entire trial was conducted on this theory.

Thus, only a single operation is involved to be performed by Pacific and paid for by District. There is no contention that it will require a great deal of time for completion. Pacific does not deny its obligation to Club. District's obligation to Pacific to pay installation costs is likewise clear. Thus the rule against the use of specific performance where continuous and extended supervision over a long series of acts is involved does not apply. (*Gale* v. *Seymour,* 91 Cal.App.2d 727 [205

P.2d 752].) No other point is made on this appeal with respect to specific performance.

That it might be less complicated and more advantageous financially for District to itself do the work is, of course, possible. However, Club has a direct contractual right to specific performance only against Pacific. Pacific, in its turn, has contractual rights of reimbursement from District. Since District refuses to perform the installation, Pacific must fulfill its contract and, in turn, recover the cost of such installation from District. We are satisfied that under the pleadings and trial presentation peculiar to this case, executory relief ordered by the trial court is proper. (*Knox* v. *Wolfe,* 73 Cal. App.2d 494, 505 [11-13] [167 P.2d 3].)

Paragraphs 3 and 5 of both the Conclusions of Law and the judgment are each, respectively, modified to read as follows:

"3. If the District exercises its option to complete the installations in Tract 1517, then it shall do so without charge to Pacific."

"5. If Pacific is required to complete the pipelines in Tract 1517 it shall be done in accordance with the terms of the Agreement for Water Service between Bakersfield Country Club Improvement Co. and Mountain Properties, Inc. and the District Engineer shall have the right to make recommendations as to the installation."

Paragraph 6 of both the Conclusions of Law and the judgment is deleted and stricken in its entirety.

That portion of the trial court's additional order made April 5, 1960, wherein there was added to the Conclusions of Law and Decree an order for the commencement of work is modified to read as follows: "It is ordered that the Pacific Water Company, a corporation, start the installation of this work on or before ninety days after this judgment becomes final."

As so modified, the judgment is affirmed. Each party shall bear its own costs on appeal.

Griffin, P. J., and Coughlin, J., concurred.

Petitions for a rehearing were denied June 20, 1961, and the petition of appellant East Niles Community Services District for a hearing by the Supreme Court was denied July 19, 1961.