CHARLES E. BROWN, Plaintiff and Appellant, v. R. A. WATT, Defendant and Respondent.

Miller, Ford & O'Neal and Charles J. Miller for Plaintiff and Appellant.

Dillavou & Cox and Richard Amerian for Defendant and Respondent.

FOURT, J.—Charles E. Brown, real estate broker, appeals a judgment[1] entered pursuant to jury verdict, awarding him commissions in the amount of $563; appellant claims that he is entitled to an additional $21,541.80 in commissions according to his prayer.

In May of 1958, subdivider R. A. Watt entered into an escrow for the purchase of 163 acres of property and as part of the purchase price gave to the seller, Artz, Carlson and Ellis, his purchase money promissory note for over $300.000 secured by a deed of trust on the property sold. Brown had been instrumental in bringing the property to Watt's attention and procuring the sale. During the course of negotiations preceding the transaction however, the seller had refused to pay the broker's commission, as is customary in such transactions, and Watt had declined to increase the purchase price to cover that obligation. Brown then offered to defer the payment of any commission until such time as Watt resold the

---

[1]When the jury returned a verdict in favor of Brown for the sum of $563, he moved for a judgment notwithstanding the verdict and a new trial. The court denied both motions and Brown appeals from both the judgment and the order denying his motion for judgment notwithstanding the verdict. (Code Civ. Proc., § 629.)

property. Although there was no other formal broker's agreement between them, Watt's acceptance of this proposal was memorialized by letter dated April 29, 1959.[2]

The escrow closed in May 1959 and Watt thereafter proceeded to subdivide the property, construct homes, and make sales to the public. However, shoftly after Watt developed the first "unit" with homes and embarked upon construction of the second "unit," the housing market in Sacramento markedly declined. Watt lost money in the liquidation of completed homes and was unable to develop the remaining acreage. Although Watt then made an effort to sell the balance of the property, he was unable to dispose of it, and subsequently he defaulted in payment on the purchase money note and trust deed held by the sellers. When Watt requested relief, the sellers refused and threatened foreclosure. Ultimately Watt proposed, and the sellers accepted, a deed in lieu of foreclosure as to all of the property securing their promissory note.

With the exception of 10 sales which were completed after Brown filed his complaint herein and one sale to the telephone company, entitling Brown to aggregate commissions in the amount of $563 by stipulation of counsel, commissions were

---

[2]                                      "April 29, 1959
"Mr. Charles E. Brown
1634 Del Dayo Drive
Carmichael, California
"Re: Security Title Escrow No. 128346
"Dear Mr. Brown:
    "The undersigned hereby agrees to pay to Charles E. Brown, the sum of $31,904.80. This sum represents a 5% real estate commission on the aggregate total purchase price of $638,096.00 for the Artz, Carlson and Ellis property, more particularly described in the above mentioned escrow. This real estate commission will be paid only in the event the above numbered escrow consummates and closes.
    "It is the intention of the undersigned to subdivide the property into lots, to improve them with houses and to offer the property for sale to the public. The undersigned agrees when the escrow on the sale of each lot and house is completed, Charles E. Brown will be paid a commission of $50.00 from the sales proceeds. This sum shall be paid until the grand total of $31,904.80 is paid to Charles E. Brown.
    "In the event the undersigned should sell any of the acreage on the above mentioned escrow 128346, there shall be due Charles E. Brown, the sum of $50.00 per lot upon completion of the sale of the acreage.
                                      "Very truly yours,
                                      "R. A. Watt [/s/]
                                      "R. A. Watt
"RAW:rj
"APPROVED BY:
"Charles E. Brown
"Charles E. Brown"

paid to Brown on all sales. Watt continues to hold a portion of the property and Brown claims no commission on that item at this time. Brown in this action claimed $563 for home and telephone company sales as eventually stipulated, and $21,541.80 as commission attributable to the reconveyance of a substantial parcel to the holders of the purchase money trust deed.

The jury made specific findings that the reconveyance by Watt was not a "sale" as that word was used by the parties in the April 29, 1959, commission letter; that Watt used due diligence in endeavoring to subdivide or sell the entire acreage; that Watt, in making reconveyance to the seller, did not have as a purpose that of depriving Brown of a commission but that in so doing Watt was merely acting as a reasonably prudent man.

Appellant contends that the court erred in denying his motion for judgment notwithstanding the verdict, and further contends that the court erroneously instructed the jury: (a) that cancellation of the purchase money note and deed of trust did not constitute consideration for the reconveyance; (b) that appellant had the burden of proving that the word "sale" in the April 29, 1959, letter was used in the ordinary sense; and (c) that appellant could recover only upon a showing that Watt was guilty of bad faith or failed to exercise due diligence in developing the property. We find that the court properly instructed the jury and thereafter appropriately exercised its discretion in denying appellant's motions.

This case turns upon the circumstances relating to, and the construction of, the letter agreement of April 29, 1959. Was Brown entitled to the payment of a commission upon any transfer of the property, or any portion thereof, by Watt, or only upon a sale for consideration? If Brown was entitled to receive a commission only upon a sale by Watt for consideration, was there any consideration when Watt executed the deed in lieu of foreclosure to the holders of the purchase money obligation? If there was no consideration for this reconveyance, then was Brown nonetheless entitled to receive a commission because Watt, either by failure to exercise due diligence to make legitimate sales or otherwise acting in bad faith, placed it beyond his power to sell the property for consideration thus intentionally depriving Brown of the anticipated contractual benefit?

The court correctly instructed the jury that the reconveyance constituted a transfer without consideration

48

because, under California law (Code Civ. Proc., § 580b) as it existed on the date of the transfer (December 28, 1962), the purchaser was not personally liable for the repayment of a purchase money obligation incurred in the acquisition of real property. The uncontradicted testimony of Watt's administrative assistant, Cameron Collister, confirmed the fact that Watt received neither money, real property, nor personal property in exchange for the deed to the original sellers.

█ The court further instructed the jury with respect to the plaintiff's burden of proof. This instruction provides in pertinent part that plaintiff must prove by a preponderance of the evidence, "That the word 'sale' as used in [the April 29, 1959, letter] was used in its ordinary sense and contemplated a transfer of the property for any consideration." It is the presumption in this state that the words are used in their generally accepted sense (Code Civ. Proc., § 1861) and a "sale" ordinarily implies a transfer for consideration. While it is, therefore, not accurate to require appellant to demonstrate that the word "sale" was used in its ordinary sense, no prejudice appears where appellant's burden was actually greater than that required by the instruction. Appellant had the burden of demonstrating by a preponderance of the evidence that the condition precedent to his right to recover a commission (i.e., a "sale") either occurred or was excused. (Code Civ. Proc., § 2061, subd. 5.) Where appellant attempts to recover a commission for a transfer without consideration, he must show that the parties thus intended for some expanded meaning of the term "sale" to apply. It then becomes a question of fact for the jury to determine whether the transfer herein fell within the terms of the agreement. (*Shafford* v. *Otto Sales Co., Inc.,* 119 Cal.App.2d 849, 860 [260 P.2d 269].)

Watt testified to the circumstances surrounding the execution of the letter of April 29, 1959, to explain or assist the court and jury in their interpretation thereof. Appellant, at that time, told Watt that he would take his commission when the houses were sold because he anticipated a successful sales program. Moreover, the parties reached the understanding that Brown would receive his commission only when, as, and if homes were sold, or lots or acreage were sold to other builders, as demonstrated by the last paragraph of the letter. (See letter, fn. 2.) It is apparent that the particular contingency governing appellant's right to a commission was the completion of each escrow on the contemplated individual sales of

lots or acreage, and under the circumstances herein related, no further commission is owing. (*Cannon* v. *Selmser,* 85 Cal.App. 783 [260 P. 332].) Indeed, the letter agreement was executed only because the seller refused to pay the broker's commission and Watt would not increase the offered purchase price by that amount, hence the sale to Watt would not otherwise have been made at all. (*Cannon* v. *Selmser, supra,* p. 785.) The jury, moreover, unanimously determined that there was no "sale" within the meaning of the April 29th letter when Watt executed the reconveyance.

With the above circumstances prevailing, appellant had no right to recover his commission in the absence of bad faith on Watt's part or his failure to exercise due diligence to sell the remaining property for consideration, as the court correctly instructed the jury. The issue is whether Watt, by his conduct, unjustly deprived appellant of the commission to which he otherwise would have been entitled and thus should not be allowed to escape liability. (*Bewick* v. *Mecham,* 26 Cal.2d 92, 99 [156 P.2d 757, 157 A.L.R. 1277] ; *Lynch* v. *Keystone Consol. Min. Co.,* 163 Cal. 690, 700 [126 P. 968].)

▮ Whether a party voluntarily places it beyond his power to meet the conditions of a contract is a question of fact (*Overton* v. *Vita-Food Corp.,* 94 Cal.App.2d 367, 371 [210 P.2d 757]), which the jury here resolved against appellant. Appellant failed to show that Watt did not make the contemplated proper and reasonable efforts to subdivide and sell the property, and he must be denied recovery on that basis. (*Parsons* v. *Bristol Dev. Co.,* 62 Cal.2d 861, 869 [44 Cal.Rptr. 767, 402 P.2d 839].) Indeed, appellant has demonstrated neither bad faith nor lack of diligence by Watt. The evidence discloses that the failure of the contract occurred simply by virtue of the unanticipated rapid decline of the Sacramento real estate market, a factor beyond the control of either party.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 8, 1967, and appellant's petition for a hearing by the Supreme Court was denied January 11, 1968.